**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00512-NYW

KATHLEEN LYNCH, an individual,

      Plaintiff,

v.

OLYMPUS AMERICA, INC.,
OLYMPUS CORPORATION OF THE AMERICAS,
OLYMPUS MEDICAL SYSTEMS CORP., and
Does 1 through 20 inclusive,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This case comes before the court on four Motions to Dismiss filed by the three named Defendants in this action, Olympus America, Inc. ("Olympus America"), Olympus Corporation of the Americas ("OCA"), and Olympus Medical Systems Corporation ("Olympus Medical") (collectively, "Defendants"). The undersigned Magistrate Judge fully presides over this case pursuant to 28 U.S.C. § 636(c), the Parties' consent, and the Orders of Reference dated May 2, 2018 [#11; #14]. In these Motions to Dismiss, Defendants argue for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) ("the 12(b)(6) Motions"), alleging that Plaintiff Kathleen Lynch ("Plaintiff" or "Ms. Lynch") has failed to state a claim upon which relief can be granted [#18; #19; #20, filed May 14, 2018].[1] On that same day, Olympus Medical filed a Rule 12(b)(2) motion ("the 12(b)(2)

---

[1] This court uses the convention [#__] to refer to the docket entry number assigned by the court's Electronic Court Filing ("ECF") system.

Motion" and collectively with the 12(b)(6) Motions, "Defense Motions"), arguing that it should be dismissed as a defendant for want of personal jurisdiction.  [#17].  Plaintiff responded to the 12(b)(6) Motions and the 12(b)(2) Motion on May 29 [#21; #22; #23; #24] and the Defendants replied on June 12 [#28; #29; #30; #31].  The Defense Motions are now ripe for disposition and this court concludes that oral argument would not materially assist resolution of the Defense Motions.  For the reasons set forth in this Memorandum Opinion and Order, the 12(b)(6) Motions by Olympus America and OCA are **GRANTED**.  In addition, the Rule 12(b)(2) Motion by Olympus Medical is **GRANTED**, and its Rule 12(b)(6) Motion is **DENIED AS MOOT**.

## BACKGROUND

The following facts are drawn from the operative Complaint in this action and are taken as true for the purposes of the instant 12(b)(6) Motions.  An endoscopy is a medical procedure that involves the insertion of an endoscope into a patient's body for therapeutic and/or diagnostic purposes.  [#1 at ¶¶ 19, 24].  Defendants are in the business of manufacturing, selling, and distributing such devices, including the particular device at issue in this case: the TJF-Q180V Duodenoscope ("Q180V Scope").[2]  [*Id.* at ¶ 19].  Olympus Medical is a Japanese corporation headquartered in Tokyo, Japan that designs, manufactures, and sells endoscopes.  [*Id.* at ¶ 5].  Olympus America and OCA are New York corporations with principal places of business in Pennsylvania that perform regulatory and quality assurance functions for the medical devices

---

[2] A duodenoscope is a particular type of endoscope used, as relevant here, for a procedure called endoscopic retrograde cholangiopancreatography ("ERCP").  [#1 at ¶ 1].

manufactured by Olympus Medical. [*Id.* at ¶¶ 3, 7]. Plaintiff pleads that Olympus America and OCA are virtually indistinguishable from one another in functions and responsibilities. [*Id.* at ¶ 8].

In 2010, Olympus Medical redesigned the Q180V Scope, broadening the range of scope positions in which the guide wire could be securely locked. [*Id.* at ¶¶ 19, 26]. This redesign changed the overall design of the Scope, but Olympus Medical did not alter the required reprocessing protocols when selling the redesigned Scope. [*Id.* at ¶ 27]. Sellers of medical equipment like the Q180V Scope are required to provide instructions for end-users to clean and sterilize the scope after use to avoid cross-contamination between patients. [*Id.* at ¶ 19]. If a seller provides an inadequate reprocessing protocol, then end-users following that protocol will not adequately sterilize the scope between uses. [*Id.* at ¶ 20]. If a scope is not adequately cleaned, a patient is placed at an increased risk for potentially serious infection when they are exposed to residual fluids and biological matter from a prior patient. [*Id.* at ¶ 22].

Plaintiffs allege that not only did Olympus Medical fail to update the reprocessing protocols so end-users could reliably clean their Q180V Scopes, the Scope was redesigned in such a manner that reliable cleaning was either difficult or entirely impossible. [*Id.* at ¶ 25]. Specifically, the elevator assembly in the Scope contains microscopic crevices that cannot be reached with a brush during cleaning.[3] [*Id.*]. These crevices can retain leftover fluids or biological matter after use and lead to serious infection when used on a new patient. [*Id.*].

In January 2016, Ms. Lynch underwent an ERCP at UCH Hospital using a contaminated Q180V Scope. [*Id.* at ¶ 23]. Sometime thereafter, Ms. Lynch fell ill with an infection. [*Id.*].

---

[3] Plaintiff does not allege facts that explain whether such crevices are a design choice or the result of wear and tear on the Scope.

Believing that she fell ill due to a contaminated Q180V Scope used in her ERCP, she filed this action on March 1, 2018. [*Id.*].

## LEGAL STANDARDS

### I.    Personal Jurisdiction under Rule 12(b)(2)

Olympus Medical has filed motions to dismiss for both lack of personal jurisdiction and for failure to state a claim.  "A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31, 127 S. Ct. 1184, 1191, 167 L. Ed. 2d 15 (2007) (observing that without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case).  Though a motion to dismiss pursuant to Rule 12(b)(6) considers the sufficiency of the operative pleading and does not weigh the potential evidence that the parties might present in the case, *see Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003), Rule 12(b)(6) judgments are considered by the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") as dismissals on the merits.  *See Slocum v. Corp. Exp. U.S. Inc.,* 446 F. App'x 957, 960 (10th Cir. 2011) (observing that a Rule 12(b)(6) dismissal is considered an adjudication on the merits since it requires an evaluation of the substance of a complaint).  Accordingly, this court first considers whether Ms. Lynch has established personal jurisdiction over Olympus Medical.

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the Defendants.  *See Dudnikov v. Chalk*

*& Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). When, as here, the court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff[s] may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In considering this question, the court must accept all well pleaded facts as true and must resolve any factual disputes in favor of the plaintiff. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

To establish jurisdiction over a non-resident defendant, a plaintiff must show that the exercise of jurisdiction is authorized under the relevant state long-arm statute, and does not offend due process. *Wenz*, 55 F.3d at 1506 (10th Cir. 1995). Because the Colorado Supreme Court has determined that Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124 (2018), is coextensive with due process requirements, *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002), the inquiry is thus simplified into one basic question: whether the exercise of personal jurisdiction comports with the requirements of due process under the Fourteenth Amendment to the United States Constitution. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

However, even if this test is met, a court must still consider whether "the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091. In this inquiry the court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in

receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* at 1095.

To determine whether this court may exercise specific jurisdiction over Olympus Medical, this court looks to whether its contacts with this forum associated with the action at hand is sufficient for it to be haled into court in this District: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).[4] When a corporation sells products that reach the forum and form the basis for the litigation where personal jurisdiction is challenged, courts apply the "stream of commerce" test. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881–82 (2011). Broadly speaking, there are two interpretations of the stream of commerce test. The most permissive test requires only that the defendant place an object into the stream of commerce with the awareness that the product is being marketed in the forum state, even if the defendant does not undertake any action specifically designed to avail itself of the forum. *See Asahi Metal Indus. Co., Ltd. v. Sup. Court*, 480 U.S. 102, 117–21 (1987) (Brennan, J., concurring). The more demanding test requires that the defendant undertake an action purposefully directed toward the forum state; mere awareness that a third party

---

[4] A court may exercise either general or specific jurisdiction over a defendant. Because Olympus Medical is a Japanese corporation headquartered in Tokyo and because no party claims Olympus Medical is subject to this court's general jurisdiction, the only salient inquiry is whether the exercise of specific personal jurisdiction comports with the requirements of due process and does not offend traditional notions of fair play and substantial justice.

supplier was marketing and selling the product in the forum is insufficient without such action. *See id.* at 111–12 (plurality).

The United States Supreme Court addressed the stream of commerce test most recently in *J. McIntyre Mach, Ltd. v. Nicastro*, 564 U.S. 873 (2011). In that case, the Court reversed the New Jersey Supreme Court's exercise of jurisdiction in a plurality opinion. *Id.* at 887. Defendant was a foreign corporation who sold products in the United States through an intermediary. *Id.* at 886. One of the products ended up in New Jersey and injured Plaintiff, who sued. *Id.* at 878. Although defendant sold products in the United States, there was no allegation that defendant sold, marketed, or shipped products specifically in or to the forum, New Jersey. *Id.* J. McIntyre simply sold the machines to an American distributor it did not control, at least one of which ended up in New Jersey and harmed plaintiff. *Id.* "[A] defendant may in an appropriate case be subject to jurisdiction without entering the forum . . . where manufacturers or distributors 'seek to serve' a given State's market." *Id.* at 882 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980)). The fundamental question is whether the defendant's activities manifest an intention to submit to the power of a sovereign. *Id.* at 881. In other words, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 882 (quotations and citations omitted).

The Tenth Circuit discussed the competing formulations of the stream of commerce test in *Monge v. RG Petro-Machinery (Group) Co. Ltd.*, 701 F.3d 598 (10th Cir. 2012), but did not adopt a single test. *Id.* at 620 (stating that there was no personal jurisdiction under either test). Nevertheless, the Circuit made clear that "specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else." *Id.* at

618.  Absent explicit guidance from the Tenth Circuit, courts in this Circuit have handled the lack

of clear authority from the Supreme Court in different ways.[5]

## A. Affiliated Entities and Personal Jurisdiction

Plaintiff contends that this court may properly exercise personal jurisdiction over Olympus

Medical because it worked "in tandem" with Olympus America and OCA.  *See* [#24].  But courts

are not free to disregard corporate formalities, and for purposes of personal jurisdiction "a holding

or parent company has a separate corporate existence and is treated separately from the subsidiary

in the absence of circumstances justifying disregard of the corporate entity." *Quarles v. Fuqua*

*Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974); *see also Good v. Fuji Fire & Marine, Ins. Co.*

*Ltd.*, 271 F. App'x 756, 759 (10th Cir. 2008).

---

[5] For example, in *Eaves v. Pirelli Tire, LLC,* No. 13-1271-SAC, 2014 WL 1883791, at *10–19 (D. Kan. 2014), the court blended the competing rationales from *J. McIntyre* to conclude that the proper application of the stream of commerce test required some focus on the defendant's actions in light of the outcome in that case—reversal of New Jersey Supreme Court—and the logic underlying the different opinions.  *Id.* at *14 ("[A] majority of the Supreme Court in [*J. McIntyre*] rejected a stream of commerce approach that dispenses with examining and weighing the defendant's contacts with the forum and that imposes personal jurisdiction on no more than the defendant's use of a national distributor who happens to direct product of any quantity to the forum." (footnotes omitted)).

Other courts have applied *J. McIntyre* in light of the general principle that, when a court issues a fragmented opinion where no test or rationale is adopted by a majority, the narrowest ground controls, *i.e.*, Justice Breyer's concurrence.  *See Salt Lake City Corp. v. Sekisui SPR Americas, LLC*, No. 2:17-cv-01095-JNP-BCW, 2018 WL 4688356, at *4 (D. Utah 2018).  Still other courts have looked to the *J. McIntyre* plurality itself.  *E.g., McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1201 (D.N.M. 2013).  Finally, in *Tarver v. Ford Motor Co.,* No. CIV-16-548-D, 2016 WL 7077045, at *4 (W.D. Okla. 2016), the court looked to the test applied by the plurality and held that there must be a specific effort to target the forum. This court did not find a single court in the Tenth Circuit that applied the most permissive test, which only requires a defendant to put the offending product into the stream of commerce without any action specifically directed at the forum itself, and the Tenth Circuit's holding in *Monge* does not support such a standard.

In *Quarles*, the Tenth Circuit held that even a wholly owned subsidiary was insufficient to impute the subsidiary's contacts to its parent corporation. *Id.* at 1360, 1364. Similarly, in *Good* the Tenth Circuit came to the same conclusion when the roles were reversed—a company that held 20% of the defendant's stock could not have its contacts imputed to the defendant for purposes of personal jurisdiction. *Good,* 271 F. App'x at 759. *Good* mirrored the Tenth Circuit's prior decision in *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080–81 (10th Cir. 2004) where the plaintiff's claim of jurisdiction was the same but the subsidiary was wholly owned. *See also Pennington v. Kan. Univ. Med. Ctr. Research Inst.*, 17-1152-JWB, 2018 WL 2388898, at *3 (D. Kan. 2018) (holding the court lacked personal jurisdiction over the parent of a subsidiary in the absence of "any circumstances that could justify disregarding the corporate entity").

Accordingly, this court is not free to disregard corporate formalities when assessing whether it may properly exercise personal jurisdiction over a defendant. Rather, it must look to Olympus Medical's specific contacts not with the United States, but with Colorado.

## B. Consent

Plaintiff also argues that Olympus Medical has consented to jurisdiction in this forum, citing other cases across the nation where it has consented to jurisdiction. [#24 at 7]. A party may consent to a court's exercise of personal jurisdiction even if the court would not otherwise have personal jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). However, such a consent is limited in its effectiveness to the case in which the party so consented. A consent in one case does not affect the propriety of a court's exercise of personal jurisdiction in another case, even if related and even if in the same forum. *See Alkanani v. Aegis Def. Svcs., LLC*, 976 F. Supp., 976 F. Supp. 3d 13, 37 (D.D.C. 2014).

### C.    Jurisdictional Discovery

In the alternative, Plaintiff seeks jurisdictional discovery to establish Olympus Medical's relevant contacts with this forum. [#24 at 18]. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion. *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). Whether to allow jurisdictional discovery is within "the broad discretion" of the trial court. *Id.* The court abuses its discretion if the denial of limited discovery results in prejudice to a litigant. *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Sizova*, 282 F.3d at 1326. To obtain jurisdictional discovery, a plaintiff must "present a sufficient factual predicate for the establishment of personal jurisdiction." *Gordon Howard Assocs. v. Lunareye, Inc.*, No. 13–cv– 01829–CMA–MJW, 2013 WL 5637678, at *4 (D. Colo. 2013) (citing *St. Paul Travelers Cas. & Sur. Co. of Am. v. Guar. Bank & Tr. Co.*, 2006 WL 1897173, at *4 (D. Colo. 2006)).

## II.    Failure to State a Claim under Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). To state a claim that is plausible on its face, a complaint must "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The court has subject matter jurisdiction over this case because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Therefore, the court applies Colorado law when evaluating whether Plaintiff's state law claims state a claim under Rule 12(b)(6). *Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1200 (10th Cir. 2002). Absent clear guidance from the Colorado Supreme Court, a federal court exercising diversity jurisdiction must make an *Erie* guess as to how that court would rule. *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) ("Because Wyoming has not directly addressed this issue, this court must make an *Erie*-guess as to how the Wyoming Supreme Court would rule."). In making an *Erie* guess, courts look to decisions of the state court of appeals as strongly persuasive, if not governing, authority as to how the state supreme court would rule. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000) ("Furthermore, this court must follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise." (formatting altered) (quoting *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574

(10th Cir. 1984)); *see also, e.g.*, *U.S. ex rel. Sun Constr. Co. v. Torix Gen. Contractors, LLC*, No. 07-CV-01355-LTB-MJW, 2011 WL 841277, at *1 (D. Colo. 2011).

### III.     Pleading Special Matters Under Rule 9(b)

When a plaintiff alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake."  The rule's purpose is to "to afford [a] defendant fair notice" of a plaintiff's claims and the factual grounds supporting those claims, *George v. Urban Settlement Svcs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)), such that the defendant is provided the "minimum degree of detail necessary to begin a competent defense."  *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015).  Rule 9(b) does not require any particularity in connection with an averment of intent, knowledge or condition of mind, rather it simply refers to only the requirement that a plaintiff identify the circumstances constituting fraud.  *Schwartz*, 124 F.3d at 1252.

Put simply, Rule 9(b) requires that a complaint "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Id.* (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).  When plaintiff brings a claim against multiple defendants, Rule 9(b) obliges a plaintiff to specify the manner in which each defendant participated.  *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D. Colo. 1995); *see also Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1094 (D. Kan. 2003) ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth.").

Rule 9(b) clearly applies to intentional misrepresentation and fraud, but the law is unsettled on whether it applies to a claim of negligent misrepresentation. *Compare Conrad v. The Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1183 (D. Colo. 2009) ("Thus, a claim for negligent misrepresentation should not be governed by the pleading standard set forth in Rule 9(b).") *and Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*, 843 F. Supp. 2d 1171, 1177 (D. Colo. 2012) ("Rule 9(b) does not apply to the negligent misrepresentation claim before me. The crux of the claim . . . . rings not of fraud but negligence."), *with Gunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 4377451, at *2 (D. Colo. 2008) ("I conclude that the particularity requirement is applicable to the negligent misrepresentation claim. In this context, negligence is a type of mistake and Rule 9(b) concerns allegations of fraud or mistake."). In determining whether the heightened pleading requirements of Rule 9(b) apply, courts look not to a bright-line rule, but to the substance of the underlying allegations to determine if it is essentially a claim of fraud or mistake or a claim of pure negligence.

The court finds that Rule 9(b) applies to Plaintiff's negligent misrepresentation claim. Plaintiff's claim of negligent misrepresentation is rife with allegations of willful misconduct. So much so that it scarcely resembles a claim for negligence at all; absent the heading "Fraud— Negligent Misrepresentation," the court would likely not have interpreted the claim as a negligence claim. *See* [#1 at ¶ 68] ("Defendants made false representations . . . . Defendants falsely represented that the Q180V Scope would be disinfected and safe for subsequent use . . . . Defendants made those false representations in an effort to encourage consumers to purchase and use the Q180V Scope for medical procedures, so Defendants could profit."); [*id.* at ¶ 71] ("Defendants intended medical professionals, including Plaintiff's physicians, and patients to rely

on the Defendants' the important material representations . . . ."). Because the negligent misrepresentation claim alleges knowing material misrepresentations, the court finds that the heightened pleading standards of Rule 9(b) apply. *Cf. Conrad*, 652 F. Supp. 2d at 1183 (Rule 9(b) does not apply when the negligent misrepresentation claim "is one of negligence, rather than of intent to mislead").

## ANALYSIS

### I. Personal Jurisdiction Over Olympus Medical

As discussed above, the court first considers whether it may properly exercise personal jurisdiction over Olympus Medical. Plaintiff's argument is two-fold: Olympus Medical has consented to personal jurisdiction in this case, and even if not, there are sufficient minimum contacts between Olympus Medical and Colorado for the exercise of personal jurisdiction. [#24 at 2]. The court addresses these arguments in turn.

#### A. Consent

Despite Plaintiff's argument to the contrary, Olympus Medical has obviously not explicitly consented to personal jurisdiction in this case—it has filed a motion to the contrary. This court is similarly unpersuaded that any consent by Olympus Medical to personal jurisdiction in any other case can or should be construed as consent by Olympus Medical to the jurisdiction of this court in Colorado. [#24 at 7–8]. There are no references to Colorado, the state in which this court resides, or to this case, the object of the alleged consent, in any of those other cases. And this court disagrees that Olympus Medical's statements in other cases may be interpreted as a general "stipulat[ion] that plaintiffs in other Q180V Scope cases, where those plaintiffs file in their home states, would be able to exercise jurisdiction in plaintiffs' home states." [#24 at 7].

Even if this court were to somehow extract a "stipulation" from counsel's argument in a separate action, it appears that such statement was made before this case was even filed, and consent is case-specific. *Compare* [#24-2 at 19] (oral argument occurring on July 6, 2016), *with* [#1] (Complaint filed March 1, 2018). Thus, Plaintiff has not met his burden to establish personal jurisdiction under this theory.

### B. Minimum Contacts

The court now turns to the contacts between Olympus Medical and the forum state of Colorado. While not settled, this court discerns from the jurisprudence of the Tenth Circuit that under any test, to be subject to this court's personal jurisdiction, Olympus Medical must undertake at least some action directed specifically at Colorado to purposely avail itself to the jurisdiction of its courts, and Plaintiff cannot rely upon actions taken by others to confer jurisdiction.

Taking the allegations by Plaintiff as true, this court finds as follows for the purposes of its Rule 12(b)(2) analysis. Olympus Medical does not directly operate in the United States, but it works closely with its American affiliates, Olympus America and OCA, which do. Plaintiff points to several contacts that Olympus Medical has with the United States: it ships its scopes to a warehouse in Pennsylvania for ultimate distribution across the world, [#24-1 at 12], and has developed a marketing plan to sell the Q180V Scope to all facilities performing ERCP procedures [#24-1 at 19–20]. Several of Olympus Medical's scopes have been sold to Colorado hospitals through dedicated account managers working for Olympus America or OCA. [#24 at 11; #24-1 at 25]. Across the entire United States, Olympus Medical has sold thousands of Q180V Scopes. [#24 at 11; #24-1 at 27].

This court is not convinced by Plaintiff's reliance on Olympus Medical's marketing strategy to demonstrate that Olympus Medical targeted Colorado. The marketing strategy is simply too general, targeting all hospitals that perform ERCPs, which do not appear to be uncommon procedures. Even if Plaintiff is correct that the strategy was specific to the United States, there is no distinction between the states nor any recognition within the strategy itself that reflects that Olympus Medical was directing its actions toward Colorado. The development of a global or country-level marketing plan does not rise to the level of a "substantial connection" that "[came] about by an action of [Olympus Medical] purposefully directed toward[s] [Colorado]." *Asahi*, 480 U.S. at 112.

Likewise, shipping the products to another state—Pennsylvania—for worldwide distribution is not specific to Colorado and cannot form the basis for personal jurisdiction in this state. Thus, Plaintiff's argument regarding the distribution network fails. The fact that Olympus Medical sold thousands of scopes in the United States is likewise insufficient. Plaintiff has not pleaded any facts which demonstrate that Olympus Medical itself sought out the Colorado market even if one of its affiliates sold scopes directly to UCH Hospital. As currently pled, this court concludes that Plaintiff has failed to carry her burden of establishing personal jurisdiction over Olympus Medical, and thus, Olympus Medical's Rule 12(b)(2) Motion is **GRANTED**.

C.    **Jurisdictional Discovery**

As it stands, there is no evidence that Olympus Medical targeted their products, specifically the duodenoscope at issue, at the Colorado market; there is no evidence that Olympus Medical had anything more than a general awareness that it was probable that their products would end up in Colorado. Plaintiff thus seeks jurisdictional discovery to ascertain whether there are facts that

would support this court's personal jurisdiction over Olympus Medical, pointing to correspondence that regarding a duodenoscope order request from a St. Louis hospital to which an Olympus Medical employee, Ichiro Ohdachi, is involved. [#24 at 30–33].[6] While contacts arising regarding an order from a St. Louis hospital, standing alone, is insufficient to confer personal jurisdiction in this forum, similar contact between Olympus Medical and Olympus America that arose from orders made by Colorado hospitals or doctors would be relevant to determining whether Olympus Medical purposefully directed its actions at this forum.

Accordingly, while this court finds that it does not currently have personal jurisdiction over Olympus Medical, it also finds that jurisdictional discovery may appropriate to the extent that Plaintiff elects to pursue amended claims against Olympus Medical. Given the disposition of the Rule 12(b)(6) Motions by Olympus America and OCA discussed below, this court defers jurisdictional discovery at this time. But it is clear that jurisdictional discovery is necessary in this case if Plaintiff refiles an amended complaint, and requiring a separate weeks-long series of briefing on the issue accomplishes only delay and serves no party or legitimate goal. To the extent that Plaintiff files an Amended Complaint that includes Olympus Medical, the court will then open limited jurisdictional discovery. This court encourages the Parties to meet and confer about the specifics of such discovery, including what might be accomplished informally prior to the deadline of filing an Amended Complaint, and be prepared to address them in the contemplated briefing as set forth below.

---

[6] Because some of the contents of Plaintiff's exhibits to her Response some are partially written in Japanese [#24-2 at 6–7], without an accompanying certified translation, this court's review of such exhibits is limited to the English contents.

## II. Strict Products Liability

### A. Design Defect

In her First Cause of Action, Plaintiff asserts a claim for strict products liability based on design defect. Colorado applies the strict liability principles set forth in the Restatement (Second) of Torts § 402A (1965).[7] *Walker v. Ford Motor Co.*, 406 P.3d 845, 849 (Colo. 2017); *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536–37 (Colo. 1997). Under this test, there are five requirements to establish a products liability claim based on a design defect theory: (1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it was sold; (3) the defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages. *Barton*, 938 P.2d at 536–37 (citing Restatement (Second) of Torts § 402A (1965)); *see also Camacho v. Honda Motor Co., Ltd.*, 741 P.3d 1240, 1244 (Colo. 1987).

---

[7] Defendants rely authority which applies, or considers in the alternative, the Restatement (Third) of Torts § 6(c) when evaluating claims of defectively designed medical devices. *See, e.g., Haffner v. Stryker Corp.*, No. 14-cv-00186-RBJ, 2014 WL 4821107 (D. Colo. 2014); *O'Connell v. Biomet, Inc.*, 250 P.3d 1278, 1281 (Colo. App. 2010). [#18 at 11]. But since those cases were decided, the Colorado Supreme Court has restated the applicability of § 402A for design defect cases involving technical, complex products designs where the safety of the product is determined by technical, scientific information. *Walker*, 406 P.2d at 851; *see also Camacho*, 741 P.3d at 1249. And contrary to Defendants' argument, the § 6 standard has not been "adopted by this Court" [#18 at 11]. Rather, the *Haffner* court considered the § 6 standard due to the lack of clear authority on the matter, but it did not affirmatively adopt it as the governing standard. As a court sitting in diversity over a state law claim, this court must defer the most recent decisions of the state's highest court. *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010). Thus, the court is persuaded that the standard set forth in § 402A, as interpreted in recent Colorado Supreme Court cases, remains the governing standard as to a design defect theory.

Plaintiff claims that the Q180V Scope was defectively designed because its unique design and outdated processing protocol meant that end-users were not able to fully sterilize the device between uses, harming patients through cross-contamination of biological matter. [#1 at ¶¶ 35–44]. Plaintiff pleads that the device reached Plaintiff without material alteration, and neither Plaintiff nor her physician were aware that the defective design/processing protocol rendered the device dangerous to use (more than once at least). [*Id.*].

Defendants move to dismiss, arguing that Plaintiff has failed to allege several critical elements of a design defect under a strict liability theory. Defendants contend that Plaintiff has not identified the alleged defect, has not alleged facts that establish the Q180V Scope is unreasonably dangerous, and has not identified a specific causal link between the defect and her injury. [#18 at 10]. Defendants also point out that Plaintiff has made no showing regarding the risk-benefit test. [Id. at 11–12]. Finally, Defendants argue that Plaintiff has not identified the mechanism by which the harm she suffered resulted from the defective design—all that Plaintiff has alleged is that she underwent a procedure and then was diagnosed with a drug resistant infection, leaving one to assume that the two are connected. [*Id*. at 13]. Plaintiff counters that the Defendants have misapprehended the relevant standard. [#22 at 7]. Plaintiff claims that the Q180V Scope is not safe for any patient, and thus there was no requirement to plead that the risks outweighed the benefits but even if there was, the Complaint did so adequately. [*Id*. at 8–9].

A product may be in a "defective condition" as described above because of a design defect that renders the product unreasonably dangerous despite the fact the product was manufactured precisely as designed. *Walker*, 406 P.3d at 849. In determining whether a product is unreasonably dangerous such that its condition is defective, Colorado applies the risk-benefit test. *Id*. at 850.

Under the risk-benefit test, the plaintiff has the burden of establishing the unreasonable dangerousness of the product by proving that the risk of harm outweighs the benefits of the design. *Id.*; *Armentrout v. FMC Corp.*, 842 P.2d 175, 182 (Colo. 1992). The *Armentrout* court provided seven considerations for this test:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
>
> (2) The safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury.
>
> (3) The availability of the substitute product which would meet the same need and not be as unsafe.
>
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
>
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
>
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
>
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.
>
> *Armentrout*, 842 P.2d at 184.

These factors are non-exclusive and need not be applied in every case. *Id.*; *Walker*, 406 P.2d at 850. But establishing the unreasonable dangerousness of a product requires alleging some facts to establish that this test is met. The Colorado Supreme Court has clarified that this risk-benefit test, with the burden on the plaintiff, is appropriate "in design-defect cases involving technical, complex product designs." *Walker*, 406 P.2d at 851.

Applying these principles, this court concludes that Plaintiff fails to state a claim because she has failed to allege that the risks outweigh the benefits of the design such that the device is unreasonably dangerous—an element of a prima facie case for a design defect. *See Armentrout*, 842 P.2d at 182. Contrary to Plaintiff's argument that the Q180V Scope is unsafe for any patient, that allegation is not supported by the pleading itself. Plaintiff's allegations involve the reprocessing protocol after use, not the scope as sold. Presumably, the initial use of the scope does not involve its reprocessing protocol. While Plaintiff claims that the design of the scope renders proper cleaning "difficult or impossible," merely being difficult to clean does not render the device unsafe for all patients and does not relieve Plaintiff of the burden of pleading facts to satisfy the § 402A risk-benefit test. [#1 at ¶ 25].

Further, the court agrees that Plaintiff has not plausibly alleged causation despite her arguments in Response. [#22 at 11–13]. Plaintiff states that she was exposed to a contaminated scope when she underwent an ERCP in January 2016, and that "as a result" she was diagnosed with a multidrug resistant infection. [*Id.* at ¶ 23]. But these allegations are too conclusory, *e.g.*, [*id.* at 12 (stating that the infection was caused by the scope)], or are applicable to only a general class of patients not joined, *e.g.*, [*id.* at 11 (stating that "the end-users exposed multiple patients to potentially contaminated Q180V Scopes" but not Ms. Lynch specifically)]. This is not a class action, and general allegations that other non-party patients were exposed to contaminated scopes do not relieve Plaintiff of the burden of plausibly establishing a causal link between the Defendants' actions, her procedure, and her harm. Plaintiff's only allegations regarding causation

are that the procedure happened and sometime thereafter Plaintiff fell ill.[8]  While a complaint need

not make an exhaustive factual showing to state a plausible claim, it must at least aver sufficient

facts to allow the court to conclude that Plaintiff could succeed on the substantive merits.  Without

more, Plaintiff has simply not plausibly established a causal link between the Q180V Scope used

in her procedure and her subsequent illness.

Thus, the court concludes that Claim 1 fails to state a claim for strict liability under a design

defect theory.

### B.      Failure to Warn

In her Second Cause of Action, Ms. Lynch asserts a claim for strict products liability defect

based on a failure to warn.  [#1 at 13].  "A failure to warn adequately can render a product, which

is otherwise free of defect, defective for purposes of strict liability recovery."  *O'Connell*, 250 P.3d

at 1280.  "[T]he test is whether the manufacturer's failure to warn adequately of the potentially

dangerous propensities of its product rendered the product unreasonably dangerous."  *Barton*, 938

P.2d at 539.  "[A] medical device is not reasonably safe if reasonable instructions or warnings

regarding foreseeable risks of harm are not provided to prescribing and other healthcare providers

---

[8] For instance, the Complaint fails to allege when was Plaintiff was diagnosed and how long after
the procedure, so that the court might consider temporal proximity in causation.  Similarly, the
Complaint does not even identify the particular infection Plaintiff contracted and whether it has
been established through other courts or medical authority that it can be transmitted through a
contaminated Q180V Scope.  Plaintiff later states that the Scope was contaminated because it was
used in another patient and not adequately disinfected.  [#1 at ¶ 64].  But that factual allegation is
not incorporated into the claim as pled in the Complaint.  [*Id.* at ¶ 35] (adopting the preceding
paragraphs into the first claim).  And Plaintiff cannot amend her Complaint through arguments
made in response to the Motion to Dismiss.  *See In re Qwest Commc'ns Int'l, Inc*., 396 F. Supp. 2d
1178, 1203 (D. Colo. 2004) (finding that a plaintiff may not further amend a Complaint by alleging
new facts in response to a motion to dismiss).

who are in a position to reduce the risks of harm in accordance with the instructions or warnings." *O'Connell*, 250 P.3d at 1281 (citing the Restatement (Third) of Torts § 6(d)).

There is no binding Colorado Supreme Court decision with respect to the standard for a claim for failure to warn. Absent a determination from the state's highest court, the federal court is left to predict what the state supreme court would do, including seeking guidance from decisions rendered by lower courts in the relevant state. *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). As to claims based on a failure to warn, intermediate Colorado courts have applied the Restatement (Third) of Torts § 6(d) when evaluating a failure to warn. *O'Connell*, 250 P.3d at 1280. Section 6(d) treats prescription drugs and medical devices together and provides that "a medical device is not reasonably safe if reasonable instructions or warnings regarding foreseeable risks of harm are not provided to prescribing and other health-care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings." *Id.* at 1281. Although it does not appear that a Colorado court has specifically delineated the elements of a failure to warn claim under § 6(d), other courts applying the § 6(d) standard have: (1) The warning was defective or inadequate; (2) the alleged inadequacy caused her doctor to prescribe the drug or use the medical device; and (3) had the warning been adequate, the treating physician would not have prescribed that drug or used that device. *Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008). In applying this standard, Colorado law requires application of the learned intermediary doctrine when dealing with products or procedures available only through a medical professional. *See O'Connell*, 250 P.3d at 1281–82.

The learned intermediary doctrine recognizes that a medical professional stands between the patient and the product, and thus the failure to warn is evaluated in the context of warning the

medical professional, not the patient. In the prescription drug context, the Colorado Court of Appeals applied this doctrine and held that "the manufacturer's duty to warn has been limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." *Id.* at 1281.

While this court could not find a Colorado case applying the learned intermediary doctrine to circumstances involving medical procedures as opposed to prescription drugs, the same logic applies in both contexts, and the *O'Connell* court relied on § 6(d) which treats prescription drugs and medical devices together. Plaintiff's argument to the contrary—that a duodenoscope is a "non-prescription" device that is "used on all patients regardless of individual circumstances" [#22 at 14]—fails because even assuming it is technically correct (and it is not alleged in the Complaint so the court is not bound to accept this), it is irrelevant. The existence of a prescription only matters in the context of over-the-counter drugs versus prescription because the latter is available only through a doctor and thus is properly the learned intermediary in such a case as opposed to when a customer buys medicine of his own accord. Clearly, patients are not buying duodenoscopes over the counter to give themselves ERCPs at home. A doctor decides the procedure is required and performs it. Thus, this court applies the learned intermediary doctrine.

Plaintiff claims that the Q180V Scope was defectively designed because it failed to warn of the increased risk due to its outdated and inadequate reprocessing protocols. [#1 at ¶¶ 45–51]. According to Plaintiff, the Defendants knew that the provided reprocessing protocols were inadequate but nonetheless assured end-users that such protocols were all that was required to adequately clean the scopes between uses. [*Id.* at ¶ 49].

Although a failure to warn claim, Plaintiff's claim begins with the premise that the device is designed in such a way as to be impossible to clean, and therefore the warnings regarding the cleaning protocol were inadequate. Plaintiff's claim is, in essence, that the product was defectively designed and therefore the warning was inadequate; as pled, the failure to warn claim cannot be distinguished from the design defect claim. Any warning would be inadequate. [*Id.*]. Plaintiff never identifies the warnings provided, nor does she identify whether a reasonable physician would have not used the device upon receipt of an adequate warning. Plaintiff also identifies herself, the patient, as the individual to be warned and not her doctor. [*Id.* at ¶ 47]. Plaintiff argues that even if the learned intermediary doctrine applies, the Complaint is sufficient because it contains numerous references to warnings provided to end-users, and specifically alleges Plaintiff's hospital—although not her specific doctor—received such warnings. [*Id.* at 15].

Plaintiff fails to state a cognizable claim for several independently sufficient reasons. First, this claim fails for causation. Plaintiff has not alleged that the failure to include adequate warnings resulted in her injury because Plaintiff does not argue that adequate warnings would have lead a reasonable doctor not to use the device in her case. If the Defendants' actions (or inactions) did not result in her injury, then there can be no claim despite Plaintiff's claim to the contrary that "this is simply not an element of a failure to warn claim in Colorado." [*Id.* at 17]. Plaintiff cites to *Haffner* for support, but while it is true that the court in *Haffner* did not independently discuss causation, that is because causation was not fairly in doubt. *See Haffner*, 2014 WL 4821107, at *4 (discussing the installation of an artificial knee that was composed of elements the patient was allergic to; plainly, a reasonable and adequately warned doctor would not have installed such a

device in such a patient). Further, this claim fails for the causation infirmities discussed above—it is not plausibly alleged that the use of the device resulted in Plaintiff's illness.

Second, Plaintiff claims fails because it does not allege any particular inadequacy in the warnings provided to the end-users. Plaintiff's claim of a failure to warn is, in substance, the design-defect factual basis with a different legal theory—according to Plaintiff, there could be no adequate warning for the Q180V device because the design of the device rendered it incapable of being reliably cleaned. If the device cannot be cleaned, then there cannot be an adequate warning regarding proper cleaning procedures, and therefore the failure to include an adequate warning could not have resulted in an injury to the Plaintiff. Under the facts alleged, the only adequate warning would be "do not use" or "do not use more than once." If Plaintiff cannot articulate an adequate warning would have prevented the harm, then the claim fails because the failure to include such a warning did not result in the harm.

Third, the court finds that the learned intermediary doctrine applies. Therefore, Plaintiff's claim fails because she does not allege the failure to warn as applied to her physician. It is true that Plaintiff notes that her hospital was inadequately warned [#1 at ¶ 49], but the plain terms of her claim refer to her own awareness of the dangers and not her physician's. [*Id.* at ¶ 47] ("It was reasonably foreseeable that patients, such as Kathleen Lynch, undergoing ERCP with a Q180V Scope, would be unaware that the Q180V Scope was defective[.]"). Although this is an independent reason to find that Claim 2 fails to state a claim, the court notes that it is deeply linked to the first reason; Plaintiff fails to allege causation in part because Plaintiff has failed to identify the proper party as the subject of the warning and vice versa.

Thus, claim 2 as pled fails to state a cognizable claim and is subject to dismissal.

### III.    Negligence and Products Liability

Products liability claims are based either on strict liability, in which case the focus is on the condition of the product itself as a matter of empirical fact, or negligence, in which case the focus is on the reasonableness of the manufacturer/defendant's conduct in context. *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 727 (Colo. 2010). Plaintiff's Third Cause of Action is one for negligence. [#1 at 15]. To establish a negligence claim, a plaintiff must establish (1) the defendant owed a duty of care; (2) defendant breached that duty; (3) plaintiff suffered an injury, and (4) the defendant's breach caused the injury. *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002). A legal duty to use reasonable care arises in response to a foreseeable risk of injury to others. *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 209 (Colo. 1984).

Plaintiff's negligence claim fails for the same reason that the first two claims two: inadequate factual allegations establishing causation. Absent plausible allegations linking the Defendants' actions to the Plaintiff's harms, there is no plausible claim for relief. Therefore, dismissal is proper as to Claim 3.

### IV.    Intentional and Negligent Misrepresentation

Under Colorado law, a plaintiff must make five showings to establish a claim of intentional fraudulent misrepresentation: (1) the defendant made a false representation of material fact; (2) the one making the representation knew that it was false; (3) the person to whom the representation was made was ignorant of the falsity; (4) the representation was made with the intention that it be acted upon; and (5) the reliance resulted in damage to the plaintiff. *Vinton v. Virzi*, 269 P.3d 1242, 1246–47 (Colo. 2012). The elements for negligent misrepresentation are very similar: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a

material fact, without reasonable care; (3) for the guidance of others; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment. *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).[9]

### A. Plaintiff has not stated a claim for Intentional Misrepresentation

In her Fourth Cause of Action, Plaintiff asserts that the Defendants intentionally made false representations to the end-users of the Q180V Scope regarding the effectiveness of the provided reprocessing protocol. [#1 at ¶¶ 58–65]. Plaintiff alleges that the Defendants knew that the Scope was incapable of being reliably cleaned and sterilized after use, but nonetheless represented otherwise to the end-users of the Scope in an effort to profit from its sales. [*Id.*]. Plaintiff and her physicians reasonably relied on these representations when using a cleaned-but-still-contaminated Q180V Scope for Plaintiff's January 2016 ERCP. [*Id.*].

Defendants argue that these claims do not meet the heightened pleadings standard under Rule 9(b) for fraud-based claims. [#22 at 7]. Defendants point out that "Ms. Lynch fails to distinguish between the three Olympus Defendants, let alone set forth the time, place, and contents of the allegedly false representation." [*Id.* at 8]. Plaintiff responds that the Complaint lays out the allegations with sufficient particularity for Defendants to respond, which is the goal that the heightened standard of Rule 9(b) is designed to serve. [#22 at 3–6].

Plaintiff has not plead her claim of intentional misrepresentation with the required particularity. While the court agrees that requiring specific allegations regarding the time and

---

[9] Although the parties cite an older three-element formulation in *Bloskas v. Murray*, 646 P.2d 907, 914 (Colo. 1982), the more modern formulation controls in Colorado and binds this court—though the two different formulations do not appear to be materially different.

place of the misrepresentations is not necessarily appropriate when the other information already provided is enough to serve the overarching goal of Rule 9(b) of permitting an adequate response, Plaintiff's allegations fail to provide adequate notice to Defendants and the court.

Plaintiff fails to identify which party is responsible for which misrepresentations, and instead Plaintiff simply asserts this claim against all Defendants. *See* [#1 at ¶ 59, 60, 61, 62, 63, 64, 65] (each paragraph refers to "Defendants" but none refer to any specific defendant). Even if Plaintiff had alleged some conspiracy between these parties such that their shared legal liability was plausibly established (and Plaintiff has not beyond the unsupported, conclusory assertion that the three companies are the alter egos of one another [#1 at ¶ 11]), this would still be inadequate because the factual allegations are not tied to any particular party. It seems unlikely that all three defendants made the same "false representations to Plaintiff and/or Plaintiff's physicians" [*id.* at ¶ 60], but even if that were the case, neither the court nor the Defendants are given sufficient information to understand that representatives of Olympus America and OCA made the same false representations to the respective Plaintiff and/or her physicians. This form of "shotgun pleading" places the burden on the court and the defendants to disentangle unclear and incomplete facts.

Plaintiff also fails to identify which alleged misrepresentations are at issue. Plaintiff alleges that the Defendants (again, all of them) owed legal duties to provide certain information regarding the safety of the Q180V Scope and the adequacy of its reprocessing protocol. [*Id.* at ¶ 59.] Presumably, these are the intentional misrepresentation(s), but the Plaintiffs allege nothing regarding the substance, the speaker, the time, the place, or manner of these misrepresentations.

In her Response, Plaintiff attempts to address these infirmities by alleging that she has set forth the time, place, and manner of the false statements. [#22 at 4–5]. But her citations to the

Complaint do not support her argument. For time, Plaintiff cites paragraphs 19 and 61 of the Complaint, but aside from containing the word "time," these paragraphs are not on point. Paragraph 19 refers to when Olympus Medical redesigned the endoscopes, not when it made the false representations which Plaintiff's physician allegedly relied on. Paragraph 61 refers to the failure of Defendants to acknowledge the inadequate reprocessing system provided for the Q180V Scope. But a claim of intentional misrepresentation refers to affirmative misstatements, not a mere failure to warn. *See Vinton*, 269 P.3d at 1247.

Lastly, it bears mentioning that the failure to allege causation as described above is again an independently sufficient reason to grant the 12(b)(6) motions on this point. For the reasons stated above, the 12(b)(6) motions by Olympus America and OCA are granted as to Claim 4.

### B.      Plaintiff has not stated a claim for Claim 5: Negligent Misrepresentation

Plaintiff's Fifth Cause of Action is one for negligent misrepresentation. [#1 at 18-19]. The Parties disagree over the threshold question of whether Colorado recognizes a claim for negligent misrepresentation when the plaintiff has also alleged a failure to warn claim. [#18 at 17–18] (Defendants' claim that the failure to warn subsumes the negligent misrepresentation claim); [#22 at 17–18] (Plaintiff's response that there is no such rule and Defendant's authority is distinguishable). Defendants' authority is a Colorado Court of Appeals case and a federal district court case; there does not appear to be any authority from the Colorado State Supreme Court. As discussed above, absent clear guidance from the Colorado Supreme Court, this court must predict how that court would rule, *Pehle*, 397 F.3d at 901, and looks to the state of the law at the state court of appeals as strongly persuasive, if not governing, authority as to how the state supreme court would rule. *Koch*, 203 F.3d at 1230.

Plaintiff has not pointed the court to any authority contrary to the Colorado Court of Appeals' decision in *Bailey v. Huggins Diagnostic & Rehabilitation Center, Inc.*, 852 P.2d 768 (Colo. App. 1997), although she does argue that it is distinguishable. But the law from the state intermediate court does not need to be directly on point to inform the court's decision as to how the Colorado Supreme Court would rule if presented with the question. The question then becomes whether *Bailey* is sufficiently on point to inform this court's ruling.

The court is not persuaded that *Bailey* is sufficiently analogous to the present case because the plaintiff in that case did not bring both a negligent misrepresentation claim and a failure to warn claim. *See id.* at 769. The issue in that case was the lack of a duty of care, which fatally undermined the negligent misrepresentation claim. *Id.* at 772 ("[Defendant] owed no duty of care to plaintiff."). Therefore, the court declines to rule that a negligent misrepresentation claim cannot coexist with a failure to warn claim even when based on substantially the same conduct.

This determination, however, does not end the court's inquiry pursuant to Rule 12(b)(6). Plaintiff's claim of negligent misrepresentation meets the elements set forth in *Allen v. Stelle*, 252 P.3d 476 (Colo. 2011), but has failed to plead the particularity required under Rule 9(b). The same analysis discussed above on the intentional misrepresentation claim applies, and the court will not repeat itself here. Similarly, the court finds that the same causation infirmities discussed above still apply. For those two reasons, the court dismisses Claim 5 for failure to state a cognizable claim.

This court grants the Rule 12(b)(6) Motions by Olympus America and OCA and dismisses these claims without prejudice. Accordingly, it is also appropriate to allow Plaintiff leave to amend her operative pleading. *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir.

2014); Where a complaint fails to state a claim under Rule 12(b)(6), dismissal without prejudice is appropriate where granting leave to amend would not be futile, and generally, the court will permit plaintiff to cure her defects through amendment at least in the first instance. *See The Sherwin-Williams Co. v. SUSE, LLC*, No. 2:15-CV-129-JNP-DBP, 2015 WL 10990185, at *7 (D. Utah Oct. 23, 2015) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1) Defendant Olympus Medical Systems Corporation's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction [#17] is **GRANTED**;

(2) Defendant Olympus Medical Systems Corporation's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [#20] is **DENIED AS MOOT**;

(3) Defendant Olympus America Inc.'s Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [#18] is **GRANTED**;

(4) Defendant Olympus Corporation of the Americas' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [#19] is **GRANTED**;

(5) Plaintiff is **GRANTED** leave to file an Amended Complaint, the deadline for which is **SET** for **November 20, 2018**; and

(6) To the extent that Plaintiff names Olympus Medical Systems Corporation as a defendant in an Amended Complaint, any motion for jurisdictional discovery, filed a manner compliant with D.C.COLO.LCivR 7.1 and containing the type and amount of proposed discovery, is **DUE November 27, 2018**. Olympus America's

Response is **DUE** ten days after filing of the motion for jurisdictional discovery; no reply will be permitted without leave of court.

DATED:  October 30, 2018                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge